IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH LAMAR,                )
                              )
            Plaintiff,        )
                              )
    v.                        )   No.  05 C 817
                              )
EXPERIAN INFORMATION SYSTEMS, )
                              )
            Defendant.        )

MEMORANDUM OPINION AND ORDER

Kenneth Lamar ("Lamar") has sued consumer reporting agency Experian Information Solutions, Inc. ("Experian"), asserting violations of the Fair Credit Reporting Act ("Act," 15 U.S.C. §§1681-1681u).[1] Experian has moved for summary judgment as to all claims under Fed. R. Civ. P. ("Rule") 56. Because Experian has demonstrated the nonexistence of any genuine issue of material fact, its Rule 56 motion is granted and this action is dismissed with prejudice.

Summary Judgment Standard

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to the nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir.

---

[1] Further references to the Act take the form "Section--," omitting the repetition of "15 U.S.C."

2002)). But to avoid summary judgment a nonmovant must produce "more than a mere scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). What follows is a summary of the facts, viewed of course in the light most favorable to nonmovant Lamar--but within the limitations created by the extent of his compliance with Rule 56 and LR 56.1.[2]

## Background

On September 21, 2004 Experian received a communication from Lamar via its website, requesting an investigation of a collection account appearing on his Experian-generated credit report (E. St. ¶15). Lamar said that the collection account in

---

[2] This District Court's LR 56.1 implements Rule 56 by requiring the parties to submit evidentiary statements and responses to such statements, to highlight which facts are disputed and which are agreed upon. This opinion cites to Experian's LR 56.1 statement as "E. St. ¶--," to Lamar's LR 56.1 statement of additional facts as "L. Add. St. ¶--" and to Experian's reply to Lamar's statement of additional facts as "E. R. St. ¶--." Where an assertion in either party's LR 56.1 statement is undisputed by the opponent, the opinion includes only a citation to the original statement. "E." and "L." designations are also used in referring to all other documents submitted by the parties.

2

question, identified as IC System Inc. ("IC System") #4235914022, was not his (id. ¶¶12, 15). Lamar further explained that he had never lived at the address on Stetson Street in Fall River, Massachusetts that was being reported on the IC System account (L. Add. St. ¶8; E. R. St. ¶8). To assist with the investigation, Lamar included in his correspondence to Experian his full name, "Kenneth Ray Lamar," his current and two previous addresses (all in California), his social security number and his date of birth (L. Add. St. ¶11).

On the same day that Lamar disputed the IC System account, Experian sent an Automated Consumer Dispute Verification ("ACDV") form to IC System, asking it to verify whether the information listed on the IC System account matched the information provided to Experian by Lamar (E. St. ¶18). Experian explained in the ACDV that Lamar was disputing the account as "Not his/hers." Experian asked that IC Systems "Provide Complete ID" for the account (L. Add. St. ¶15; L. Ex. D).

Shortly thereafter, on October 18, 2004, Experian received an ACDV response from IC System (E. St. ¶20), stating that the account belonged to "kenneth lamar" with an address of "32 stetson st, fall river, MA 02720" (id. ¶¶20, 21; L. Ex. D). Because the name provided by IC System in its ACDV response matched the name "Kenneth Lamar" appearing in Experian's credit file for Lamar and because the Stetson Street address provided by

3

IC System was identical to the address that another tradeline, Nelnet Lns, was reporting for Lamar, Experian continued to report the IC System account (E. St. ¶¶22, 23). Experian did, however, make some slight modifications to the information in that account at the direction of IC System (id. ¶32; L. Ex. D).

Experian mailed its investigation results to Lamar on October 20, 2004 (E. St. ¶33). Eight days later Lamar called Experian to contest the findings of that investigation (id. ¶34). Lamar testified that he told Experian that the IC System account "was not mine" and that Experian "needed to take it off my credit report" (id. ¶35). Lamar again specifically disputed the Stetson Street address in Fall River, Massachusetts that IC System was reporting (L. Add. St. ¶8).[3] Because Nelnet Lns was also reporting that same address for Lamar for four tradelines, Experian did not suppress either the Stetson Street address or the IC System account (E. St. ¶23).

Experian did not conduct any further investigation after Lamar's October 28 phone call. Lamar too ended his attempts to

---

[3] In his October 28, 2004 phone call to Experian, Lamar additionally disputed a County Street address, also in Fall River, that had reappeared on his credit report. On April 24, 2000 Experian had deleted from Lamar's file an address of "649 County Street, #2, Fall River, MA" (L. Add. St. ¶¶2, 3). Then on August 31, 2001 an Experian subscriber transmitted to Experian a nearly identical address for Lamar (id. ¶4). Because that second address did not have an apartment number, Experian considered it a new address and did not suppress it (id.). After Lamar called Experian in October 2004, Experian deleted the County Street address (id. ¶9).

4

amend his credit report through Experian's dispute procedures, instead choosing to sue Experian in February 2005 for asserted violations of the Act. One month after Lamar instituted this lawsuit, on March 30, 2005, Experian deleted the IC System account from Lamar's credit file (E. St. ¶40).

Before the onset of Lamar's disputes with Experian, he and his wife were seeking to buy a new house, and they ultimately purchased one in December 2004 (E. Ex. 3, Ans. to Interrogatory No. 14). To secure financing for that purchase, Lamar and his wife met with a mortgage broker at CenCal Mortgage Inc. ("CenCal") (id.). During the course of CenCal's mortgage search, at least three credit reports were generated for Lamar using information from Experian, all of which listed the IC System account: one on August 26, 2004 and another on November 22, 2004, both created by the Credit Bureau of San Louis Obispo, and a third merged credit report on December 27, 2004, generated by LandSafe (E. Exs. 4, 7). When Lamar and his wife finally acquired a mortgage, only the wife was listed on the loan (L. Add. St. ¶19).

But as the ensuing substantive discussion reflects, it is undisputed that Lamar was never _denied_ credit by anyone--indeed, he admitted that at several points during his deposition cited in

E. St. ¶43.[4] And that bears directly on Lamar's fatal failure to identify any claimed damages, as discussed hereafter.

## Claims Under the Act

It is undisputed that Experian is a "consumer reporting agency" within the meaning of Section 1681a(f), that its reports at issue are "credit reports" within the meaning of Section 1681a(d) and that Lamar is a "consumer" for purposes of Section 1681a(c). Sections 1681n and 1681o respectively create private rights of action against a consumer reporting agency for the willful and negligent noncompliance with any duty imposed under the Act (see Wantz v. Experian Info. Solutions, 386 F.3d 829, 833 (7th Cir. 2004)).

Lamar claims that Experian violated (1) Section 1681e(b) by failing to follow reasonable procedures to assure the accuracy of his credit report and (2) Section 1681i(a) by failing to conduct an adequate reinvestigation once he disputed the IC System account.[5] This opinion addresses those claims in turn.

---

[4] Although Lamar purports to deny that, referring to his own L. Add. St. ¶¶18 and 19, those paragraphs in no way support his denial. Instead Paragraph 18 is silent on that subject and Paragraph 19 does not advert to an actual denial of credit, but rather seeks to draw an inference from L. Ex. E, which is inadmissible hearsay that is not properly considered on the current motion (see Rule 56(e)). More on this subject later.

[5] Although Lamar's complaint also included a Section 1681i(c) claim involving consumer dispute statements, he has failed to even mention that claim in response to Experian's motion for summary judgment. Lamar has consequently forfeited that Section 1681i(c) claim (Palmer v. Marion County, 327 F.3d

### Reasonable Procedures for Assuring Accuracy

Section 1681e(b) provides:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

To avoid summary judgment on his claim under that provision, Lamar must raise a genuine issue of material fact as to each of four elements: (1) that there was inaccurate information in his consumer report, (2) that the inaccuracy was due to Experian's failure to follow reasonable procedures, (3) that he suffered damages and (4) that those damages were caused by the inaccuracy (Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1994)). Here it is unnecessary to speak to each of the four elements, even though those other issues have occupied the major part of the parties' memoranda (for example, Lamar's counsel has devoted just 1-1/2 pages of his 15-page responsive memorandum to the subject of damages).[6] After all, Lamar's failure to raise a genuine issue of material fact as to any claimed damages that he assertedly sustained necessarily dooms his entire claim, for the Section 1681e(b) requirements are stated in the conjunctive.

---

588, 597-98 (7th Cir. 2003) and cases cited there).

[6] This opinion should not however be misunderstood as reflecting an adverse view of Experian's other contentions--it is rather that pursuing those added lines of analysis would be surplusage under the circumstances.

7

If a consumer reporting agency violates the Act willfully or negligently, a consumer may recover actual damages and attorney's fees and costs (Sections 1681n and 1681o). And if such a violation is willful, the consumer can also recover punitive damages (Section 1681n). In all events, Lamar bears the burden of establishing that he is entitled to damages (Wantz, 386 F.3d at 833).

Lamar's Complaint alleged that he was entitled to actual damages (including damages for his assertedly being denied credit, for out-of-pocket expenses, for emotional distress and for decreased credit score), punitive damages, statutory damages[7] and costs and reasonable attorney's fees (L. Compl. ¶12, VII). Because Lamar's response to Experian's motion for summary judgment was silent as to all but his purported actual damages, and because even in that respect he spoke only of a purported denial of credit (L. Mem. 14-15), his other claims for damages are deemed abandoned (Palmer, 327 F.3d at 597-98).[8]

---

[7] It is unclear what Lamar means by "statutory damages." All of the damages Lamar requested are provided for in the Act: actual damages, punitive damages and attorney's fees and costs. There is one express provision for statutory damages under Section 1681n(a)(1)(B): Where a "natural person" obtains "a consumer report under false pretenses or knowingly without a permissible purpose," the consumer can recover "actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater." But that provision is patently inapplicable to this case.

[8] Actual damages include both monetary losses from the denial of credit and emotional damages, such as those arising

8

Certainly the denial of a mortgage to assist in buying a house--if it were proved--would be actual damage for which Lamar could recover. But the only piece of evidence that Lamar attempts to proffer in that respect is his Ex. E, a May 13, 2005 "To Whom It May Concern" letter from his mortgage broker at CenCal, Kimberly Rivas ("Rivas"):

> We were unable to put Kenneth Lamar on the loan for the new home purchase with his wife Melissa Lamar. Ken's credit was below the standards for the type of loan that they needed. Due to his credit score Melissa was the only one that was put on the loan. We were forced to do a stated income loan due to Kenneth not being able to get financing with his credit. The loan type that we could obtain with just Melissa caused the interest rate to be higher.

Rivas' letter is classic hearsay: It is an out-of-court statement that Lamar attempts to introduce to prove that he was refused a mortgage because of his poor credit score (see L. Add. St. ¶19; L. Mem. 14). Recognizing it as such, Lamar has coupled the letter with an affidavit from Rivas (also in his Ex. E),

---

from an individual's loss of reputation (see Fischl v. Gen. Motors Acceptance Corp., 708 F.2d 143, 151 (5th Cir. 1983)). As explained by Representative Sullivan, one of the sponsors of the Act, "[t]he loss of a credit card can, of course, be expensive, but, as Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed" (quoted in Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982)). But although L. Mem. 14 makes a passing reference to the possibility of that type of recovery (as to which our Court of Appeals has consistently "maintained a strict standard for a finding of emotional damage because they are so easy to manufacture"--see the reconfirmation of that standard in Ruffin-Thompkins v. Experian Info. Solutions, Inc., 422 F.3d 603, 610 (7th Cir. 2005)), Lamar has submitted nothing at all by way of evidence in that regard.

9

seeking to escape the inadmissibility of the letter by invoking Fed. R. Evid. ("Rule") 803(6)--the hearsay exception for business records. To qualify in that regard, a document must be (1) "kept in the course of a regularly conducted business activity," (2) "made at or near the time" of the events it records and (3) created by "a person with knowledge" (Datamatic Servs., Inc. v. United States, 909 F.2d 1029, 1032 (7th Cir. 1990)).

Even though Rivas' affidavit parrots the language of Evid. Rule 803(6), on its face the letter flunks at least two and perhaps all three of those requirements (although even one failure would be fatal). In short, the Rivas letter is simply not a business record within the hearsay exception.

First, with the Lamar home purchase having been completed in December 2004 and this action then having been filed in early February 2005, the generation of the "To Whom It May Concern" letter three months after suit was brought was obviously specially aimed at this lawsuit, not produced in the ordinary course of CenCal's own business. Surely it was not "the regular practice of that business activity to make the record in question" as the Rule requires.

Nor does Rivas' letter fulfill the second requirement in Evid. Rule 803(6) of being made "at or near the time" of the events recorded. Here the patently manufactured nature of the

10

letter is coupled with the five-month gap between the house closing[9] and the writing of the letter (in the latter respect see, e.g., Willco Kuwait (Trading) S.A.K. v. deSavary, 843 F.2d 618, 628 (1st Cir. 1988), holding that an interval of "more than three months" between a telex and the investigation the telex reported did not meet the Evid. Rule 803(6) timeliness requirement). Not only has there been a total absence of any attempted justification for the extended delay, but Rivas has failed to identify a single lender that denied Lamar a mortgage, instead advancing only a generalized and unsubstantiated assertion that Lamar could not receive credit. That failure graphically illustrates why contemporaneousness is an essential component of the Evid. Rule 803(6) exception.

Finally, Rivas' letter is at least problematic as to the third requirement of Rule 803(6). Although she might have had knowledge of the fact of the rejection if some lender had turned down a loan application by Lamar (something that was not stated in the letter, and of which Lamar himself said he had no knowledge), by definition the reason for any such rejection could not be known by her (or her employer CenCal) except through hearsay. After all, as a mortgage broker CenCal does not itself deny anyone credit. Instead Rivas' letter purported

---

[9] Indeed, the time gap was necessarily longer than that. Any unsuccessful efforts to get mortgage financing would necessarily have antedated the successful one.

11

to convey and characterize what might have been the decisions of potential lenders--"outsiders" to CenCal's business (cf. Davis v. G.N. Mortgage Corp., 396 F.3d 874 n.3 (7th Cir. 2005)). And to the extent that it was offered for the truth of the possible reason for such hypothetical decisions, once again it could not escape the hearsay label because any such reason would not have been within its (in this case Rivas') "knowledge."

Indeed, the selfsame destination can be reached via a somewhat different but equally valid path. Even apart from the absence of any showing of an actual denial of credit, if Rivas' statement is viewed as an assertion that Lamar could have been denied credit and, more critically, that the Experian report would have been the reason for such a hypothetical rejection, the statement would be no better than an expression of Rivas' opinion in that respect. And on that score nothing has been offered that would qualify her for the rendition of an admissible opinion under the standards of Evid. Rule 702 and its definitive exposition in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

Without the use of the inadmissible letter and its inadmissible content, Lamar's claim for damages is entirely empty--he has no evidence to support his supposed denial of credit. Instead, as Experian's R. Mem. 3 points out, the

remaining evidence actually indicates that Lamar was never denied a loan. Several times during Lamar's deposition he conceded that he was never denied credit and that in fact he was told that he could receive a mortgage for the price of the house (E. Ex. 4 at 85, 95, 100, 103).

Because Lamar has not created a genuine issue of material fact as to his having suffered any damages, it is unnecessary to address the other prongs of a Section 1681e(b) claim, all of which must be proved for Lamar to recover. Experian is entitled to summary judgment as to that claim.

### Reinvestigation of Dispute

Section 1681i(a)(1)(A) states:

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file...before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

Just as under Section 1681e(b), to prevail on a Section 1681i(a) claim Lamar "must show that he suffered damages as a result of the inaccurate information" (Ruffin-Thompkins, 422 F.3d at 608). Hence what has been said in the preceding section of this opinion is also fatal to Lamar's Section 1681i(a) claim.

### Conclusion

Lamar's failure to produce any admissible evidence to show

13

that he suffered any injury from Experian's incorrect reporting has foreclosed any possibility of relief under the Act. There is no genuine issue of material (that is, outcome-determinative) fact that would derogate from that conclusion. Hence Experian's Rule 56 motion is granted in full, and this action is dismissed with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date: January 12, 2006